IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KERRI A. WARREN,

        Plaintiff,

    v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

Case. No. 6:12-cv-01315-CL

FINDINGS AND
RECOMENDATION

CLARKE, Magistrate Judge:

    Kerri A. Warren ("plaintiff") brings this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied plaintiff's applications for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI") under the Act. For the reasons set forth below, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

Page 1 – FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

In November 2009, plaintiff protectively applied for SSI and DIB. Tr. 124, 129. In both applications, plaintiff alleged a disability onset date of July 31, 2008. Tr. 9, 124, 129. Those applications were denied initially and upon reconsideration. Tr. 92, 96. Thereafter, plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 9, 102. On March 23, 2011, plaintiff appeared and testified at the hearing before ALJ John J. Madden, Jr. Tr. 9, 32, 35–58. Plaintiff's brother, James Fijalka, also testified, as did a vocational expert. Tr. 9, 32, 59–68. On April 11, 2011, ALJ Madden issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 6–17. After the Appeals Council denied plaintiff's request for review, plaintiff filed a complaint in this Court. Tr. 1–3.

## FACTUAL BACKGROUND

Born in 1971, plaintiff was 37 years old on the alleged disability onset date and 39 years old at the time of the hearing. Tr. 16, 35, 124. She is a high school graduate. Tr. 16, 35, 171. In the past, plaintiff worked as an in-home care provider, gas station assistant manager, residential property manager, gas station cashier, car wash attendant, telephone help line operator, and fast food prep worker. Tr. 16, 36, 173–88. Plaintiff alleges disability due to chronic obstructive pulmonary disease ("COPD"), asthma, obstructive sleep apnea, obesity, osteoarthritis, back spasms, knee pain, and hip pain. Tr. 165; Pl.'s Opening Br. 1, 15.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the [Commissioner's]." *Massechi v. Astrue*, 486 F. 3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The claimant bears the initial burden to prove disability within the meaning of the Act. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the claimant's impairment meets or equals "one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the claimant can work, she is not disabled and the inquiry ends; if the claimant cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141.

At step five, the Commissioner determines whether the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R.§§ 404.1520(f), 416.920(f); *Yuckert*, 482 U.S. at 141–42. If the Commissioner establishes that the claimant can perform other work that exists in significant numbers in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566(b), 416.966(b).

## DISCUSSION

### I.     The ALJ's Findings

The ALJ used the five-step sequential framework outlined above to determine whether plaintiff was disabled. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 31, 2008, the alleged disability onset date. Tr. 11.

At step two, the ALJ determined that plaintiff had the following severe impairments: COPD, asthma, obesity, and obstructive sleep apnea. *Id.* The ALJ also noted plaintiff's complaints of back and knee pain, and an irritable bowel syndrome diagnosis, but found that these impairments were either not severe or medically determinable. *Id.*

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or equal the requirements of a listed impairment. Tr. 12.

The ALJ therefore continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform

light and/or sedentary work[1] but with the following limitations: lift up to 20 pounds occasionally and up to ten pounds frequently; stand and/or walk up to two hours and sit for up to six hours in an eight-hour workday; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. *Id.* Additionally, the ALJ determined that plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and workplace hazards. *Id.*

At step four, the ALJ found that plaintiff was unable to perform her past relevant work. *Id.* Finally, at step five, the ALJ found that, despite her limitations, plaintiff could perform jobs that exist in significant numbers in the national and local economies, such as charge account clerk (DOT 205.367-014, sedentary, SVP 2), order clerk (DOT 209.567-014, sedentary, SVP 2), and taper (DOT 017.684-010, sedentary, SVP 2). Tr. 16–17. Therefore, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. Tr. 17.

## II.     Plaintiff's Allegations of Error

Plaintiff alleges that the ALJ erred by: (1) finding her alleged thoracic and lumbar osteoarthritis to be non-severe at step two; (2) discrediting her testimony; (3) discrediting the lay witness testimony; (4) rejecting the opinions of Eduardo Cuevas, M.D., and Arnoldo Padilla Vazquez, M.D.; and (5) inadequately considering the effect of plaintiff's obesity in combination with her other impairments pursuant to the RFC assessment. Pl.'s Opening Br. 2.

### A.     Step Two Findings

Plaintiff first asserts that the ALJ failed to include her osteoarthritis as a severe impairment at step two. *Id.* at 15. At step two, the ALJ determines whether the claimant has a medically determinable severe impairment or combination of impairments. 20 C.F.R.

---

[1] The ALJ did not expressly indicate the extertional level at which plaintiff could sustain employment. *See* Tr. 12. However, the RFC is largely consistent with sedentary work and, in any event, the jobs identified by the vocational expert are exclusively sedentary. *See* 20 C.F.R. §§ 404.1567(a) & (b), 416.967(a) & (b); *see also* Tr. 16–17.

§§ 404.1520(c), 416.920(c). An impairment is "not severe" if it does not significantly limit the plaintiff's ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Here, the ALJ determined at step two that plaintiff's COPD, asthma, obesity, and obstructive sleep apnea were severe. Tr. 11. Accordingly, any error in designating specific impairments as severe or not severe did not prejudice plaintiff because the ALJ resolved step two in her favor. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (even assuming that the ALJ erred in finding that the claimant's obesity was not a severe impairment, such an error was harmless because step two was resolved in the claimant's favor). For this reason alone, the ALJ's decision should be affirmed in this regard.

In any event, the record supports the ALJ's determination that plaintiff's osteoarthritis is not medically determinable. Dr. Cuevas treated plaintiff for back spasms, decreased back range of motion, back pains, knee crepitations, and knee pains, but made no mention of osteoarthritis. Tr. 14, 381–82, 386–88. Richard Bradford, M.D., who examined plaintiff on September 20, 2009, also noted that plaintiff had "low back pain" and "reports that she has bilateral knee pain, which she ascribes to osteoarthritis." Tr. 354–56. Dr. Bradford diagnosed plaintiff with morbid obesity and recommended weight loss; he did not, however, include osteoarthritis in his diagnosis. Tr. 355–56.

Jeffrey Merrill, M.D., a consulting source, noted the lack of medically determinable impairments related to plaintiff's back, knees, and hips: "[plaintiff] has not been found to have significant orthopedic impairments despite numerous medical encounters" and is instead

"impaired by her obesity." Tr. 482. Neal E. Berner, M.D., another consulting source, concluded that plaintiff's back pain was medically determinable, but not attributable to osteoarthritis. Tr. 504.

On June 10, 2010, Dr. Padilla assessed plaintiff with osteoarthritis and ordered x-rays of plaintiff's knees, pelvis, and spine. Tr. 531–43. As the ALJ noted, these x-rays were normal. Tr. 15, 533–36. At a subsequent visit, Dr. Padilla noted that plaintiff's "bilateral knee pain and low back pain . . . may be related to her body weight [because the] patient's current BMI is 42.06." Tr. 582. Unlike his assessment from June 2010, Dr. Padilla's more recent evaluation concluded that the plaintiff's morbid obesity was "likely the explanation" for her back and knee pain. Tr. 583. As such, when asked to list plaintiff's diagnoses on a February 2, 2011 "Medical Evaluation" form, Dr. Padilla opined that morbid obesity was the only condition relevant to plaintiff's orthopedic problems. Tr. 586. Thus, while Dr. Padilla initially suspected osteoarthritis caused plaintiff's knee and back pain, testing did not support that diagnosis. In sum, plaintiff has not received a diagnosis of osteoarthritis from any medically acceptable source and, the ALJ's step two finding should be affirmed.

### B.    Plaintiff's Credibility

Plaintiff next argues that the ALJ failed to provide specific, clear, and convincing reasons for rejecting her subjective symptom testimony about the extent of her impairments. *See* Pl.'s Opening Br. 13–14. In particular, plaintiff disputes that her daily activities are inconsistent with her hearing testimony. *Id.* at 14. Plaintiff further argues that the ALJ improperly based his credibility finding on her failure to follow her doctors' treatment recommendations for smoking cessation and weight loss. Pl.'s. Reply Br. 5.

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. *Smolen*, 80 F.3d at 1282. If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). If the record contains affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons for an adverse credibility finding. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan*, 169 F.3d at 599.

At the hearing, plaintiff testified that her breathing problems keep her from working because she experiences breathlessness and headaches on a daily basis, which take her, on

average, 45 minutes to recover from. Tr. 55–58. Plaintiff also testified that fog, wood stoves, dust, perfume, and cold and hot air make her short of breath. Tr. 45, 50. She stated that she uses supplemental oxygen at night and, on average, for about one hour during the day when she experiences episodes of breathlessness; she also uses a nebulizer and an inhaler. Tr. 37–38, 49–50. Plaintiff explained that, in addition to her breathing problems, her back spasms, knees and hips are her "biggest problem[s]," requiring her to take breaks and to sit or lay down. Tr. 55, 57. She testified that she must use a walker because of her orthopedic and respiratory problems. Tr. 13, 39–40. Further, she indicated that she uses an electric scooter or walker at the grocery store because her knee and back problems, in addition to her COPD, prevent her from walking. Tr. 48.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that her statements regarding the extent of these symptoms were not fully credible due to her activities of daily living and failure to follow her medical providers' recommendations to lose weight and cease smoking. Tr. 13–14.

Activities of daily living "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F3d 1104, 1112–13 (9th Cir 2012) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir.2010); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009)). Here, the record supports the ALJ's conclusion. For example, plaintiff asserts that her breathing problems keep her from working because she cannot tolerate even momentary exposure to odors, fumes, or dust. Tr. 45, 50; Pl's. Opening Br. 14, 15; Pl.'s Reply Br. 5. Yet, as the ALJ explained, plaintiff's alleged inability to tolerate excessive amounts of aerated particles would not greatly impact her ability to work because "most job environments do not involve great amounts of dust, etc." Tr.

17 (citing SSR 85-1). Additionally, no doctor has ever instructed plaintiff to avoid public places due to this sensitivity and, further, the record demonstrates that she routinely goes to the park, grocery shopping, and to appointments. Tr. 44–48, 60–61, 143–44, 189–93. Plaintiff is also exposed to dust, odors, and fumes in her own home because she lives with animals and, prior to 2010, smoked cigarettes. Tr. 13, 38, 47, 555. Furthermore, plaintiff testified that her COPD and asthma are stable and managed with medications and nighttime oxygen. Tr. 14–15, 45, 49–51; *see also Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling"). Thus, the ALJ reasonably concluded that plaintiff's daily activities belied her testimony that her breathing problems rendered her unable to work.

Similarly, plaintiff's descriptions of her daily activities are inconsistent with her claims of totally disabling orthopedic impairment. Despite plaintiff's claimed ambulatory difficulties, the record shows that she is able to go about her daily activities with only occasional assistance. She lives alone and is, for the most part, able to clean her apartment and take care of herself and her two dogs. Tr. 44–47. She can sweep, vacuum, wash dishes, cook, do laundry, go grocery shopping, and attend medical appointments. Tr. 44–48, 142, 191–93. She walks her dogs daily, regularly walks with her brother, and takes her nephew to the park. Tr. 45–46, 60–61, 144, 189–92. Moreover, the Court notes that plaintiff's alleged reliance on mobility aids is not consistent with her testimony about completing the aforementioned activities; in fact, several doctors have observed plaintiff walking unimpeded or have questioned her use of a mobility device in light of the lack of clinical findings and evidence of a normal gait. Tr. 13, 430, 482, 544.

In sum, the ALJ's provided at least one clear and convincing reason, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. Accordingly, this

Court need not discuss the ALJ's other reason. *See Carmickle v. Comm'r Social Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008). Therefore, the ALJ's credibility determination should be upheld.

### C.    Lay Witness Testimony

Plaintiff also contends that the ALJ failed to properly consider the testimony of her brother, James Fijalka. *See* Pl.'s Opening Br. 14–15. Specifically, plaintiff asserts that the ALJ improperly rejected Fijalka's statements concerning her sensitivity to cologne and to the weather. *Id.* An ALJ must consider lay witness testimony used to show the severity of an impairment or how it affects the claimant's ability to work, but may disregard it by doing so expressly and giving reasons germane to each witness. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). An ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114 (citing *Valentine*, 574 F.3d at 694).

In this case, Fijalka's testimony was similar to plaintiff's. He stated that the weather and cologne can have a negative impact on the plaintiff's breathing. Tr. 61. He also stated that, because plaintiff had difficulty with some household tasks, he helped her by taking out the trash, occasionally washing dishes, and picking up her dogs' waste. Tr. 60–62. Fijalka mentioned that plaintiff "has a hard time walking" because her hips bother her and that, due to pain, she complains when she bends over. *Id.* Further, Fijalka testified that he sees plaintiff using her oxygen tank "mostly at night" or when they go on their weekly or biweekly walks. Tr. 61. When

asked about plaintiff's daily activities, Fijalka said "we walk a lot" and that "she watches TV or the computer." *Id.*

The ALJ found that Fijalka's statements were "not credible to the extent that [they] conflicted with the [RFC]." Tr. 14–15. Initially, the Court notes that the RFC accounted for plaintiff's sensitivities to fumes, odors, dust, and gases, and, as discussed above, the ALJ adequately explained why those sensitivities would not impact plaintiff's ability to work in most environments. *See* Tr. 12, 17. As for the rest of Fijalka's testimony—concerning plaintiff's pain and exertional problems—it is not clear that the ALJ rejected those statements and plaintiff has not offered any theory as to how such statements were improperly addressed. As with his remarks regarding plaintiff's need to avoid odors and fumes, the remainder of Fijalka's testimony was vague and provided no details whatsoever about the extent of plaintiff's impairments. *See* Tr. 60–62. For example, Fijalka testified that plaintiff "has a hard time walking" but did not offer any additional detail, while later noting that they go for walks together regularly. *See* Tr. 60–61.

Even assuming that the ALJ did reject certain aspects of Fijalka's testimony without providing a legally sufficient reason, such error was harmless. *See Molina*, 674 F.3d at 1115–17 (discussing harmless error standard for lay testimony). As discussed above, the ALJ provided a clear and convincing reason, supported by substantial evidence, for discrediting similar testimony by plaintiff; it follows that this reason was also germane to Fijalka. *See Valentine*, 574 F.3d at 694 (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay

witness's] testimony"). Accordingly, the ALJ's treatment of the lay witness testimony should be upheld.

### D.    Evaluation of the Medical Opinion Evidence

Plaintiff arguest that the ALJ improperly rejected the opinions of Drs. Cuevas and Padilla. *See* Pl's. Opening Br. 10. In social security cases, there are three types of medical opinions: those of treating, examining, and non-examining physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2008). A treating physician's opinion generally carries more weight than that of an examining physician and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. If a treating physician's opinion is well supported by medically acceptable clinical findings and laboratory diagnostic techniques, and is consistent with substantial evidence in the record, it should be given controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). Even if a treating physician's opinion is not controlling, it is still entitled to deference and should be weighed in consideration of the factors set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).

If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may discredit it for clear and convincing reasons. *Id.* at 632 (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). If the treating or examining physician's opinion is contradicted by another doctor, the ALJ may reject it by providing specific and legitimate reasons. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. Finally, the opinion of a non-examining physician, by itself, does not constitute substantial evidence for rejecting the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n.2.

### 1.    Dr. Cuevas

On May 20, 2009, Dr. Cuevas saw plaintiff for the first time and completed a "Physical Evaluation" form, in which he indicated that he would not be providing ongoing care to plaintiff. Tr. 389. He found that plaintiff's "thoracic lumbar muscle spasms" were "marked," meaning that they caused "very significant interference with the ability to perform one or more basic work-related activities," and affected plaintiff's ability to lift and carry. Tr. 388. He also stated that plaintiff had restricted mobility and agility, or flexibility in bending, climbing, crouching, kneeling, pulling, pushing, reaching, and stooping. *Id.* Accordingly, Dr. Cuevas opined that plaintiff's overall work ability was "sedentary." *Id.* Dr. Cuevas left blank a section prompting him to "describe any restrictions." *Id.* The doctor reported that plaintiff was capable of doing pre-employment activities, such as job searches or employment classes, and recommended physical therapy, weight loss, and pain medications; he also stated that plaintiff's limitations should be reevaluated 90 days after she received the recommended treatments. Tr. 389.

Dr. Cuevas saw plaintiff again on August 5, 2009, this time to establish care. Tr. 370, 372. Shortly thereafter, on August 20, 2009, Dr. Cuevas completed another "Physical Evaluation" form, in which he opined that plaintiff had a decreased range of motion in her back and bilateral knee crepitations. Tr. 381–83. Dr. Cuevas did not mention or revaluate plaintiff's back spasms, the topics of his prior opinion. *See* Tr. 381. Dr. Cuevas stated that plaintiff's COPD was "marked" and affected her ability to stand, walk, lift, and carry. Tr. 382. According to Dr. Cuevas, plaintiff's knee and back pain also affected her ability to stand, walk, lift, and carry. *Id.* Dr. Cuevas repeated that plaintiff had restricted mobility and agility, or flexibility in bending, crouching, kneeling, pulling, pushing, and stooping. *Id.* He once again declined to "describe any restrictions" and then indicated that plaintiff's overall work level was "severely limited," meaning that she was "unable to lift at least 2 pounds or unable to stand and/or walk." *Id.* Dr.

Cuevas concluded by noting that knee x-rays and lumbar x-rays were in order, and recommended a pulmonary work up, weight loss, and physical therapy. Tr. 381–82.

The ALJ gave Dr. Cuevas' opinion that plaintiff was "unable to lift at least 2 pounds or unable to stand and/or walk" no weight because: (1) it was unsupported by medically acceptable clinical and laboratory diagnostic techniques, (2) it was inconsistent with other substantial evidence, including the doctor's own chart notes, and (3) Dr. Cuevas had a limited relationship with plaintiff. Tr. 14. All of these reasons are based on factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c).

As the ALJ noted, Dr. Cuevas' opinions were contradicted by several other physicians, both examining and non-examining. For example, Dr. Cuevas opined that plaintiff had decreased range of motion in her back and legs. Tr. 381, 384, 385, 387, 390. Yet several other doctors who examined plaintiff during the same time period reported that plaintiff had a normal range of motion: Mohammad Baig, M.D., reported that plaintiff's "range of motion [is] normal in all 4 extremities" on September 19, 2008; Heather Marshall, M.D., reported a normal range of motion on July 29, 2009; and Alexandra Weeks, M.D., reported a normal range of motion on August 2, 2009. Tr. 252, 320, 336.

Dr. Cuevas' opinion about plaintiff's orthopedic problems and the extreme limitations he endorsed based on them—particularly his August, 20, 2009 opinion that plaintiff was "unable to lift at least 2 pounds or unable to stand and/or walk"—also directly contradicts the observations of Drs. Bradford and Verilli. Dr. Bradford, who examined plaintiff approximately one month after Dr. Cuevas issued his most recent disability opinion, noted plaintiff's report of back and knee pain, but also found that, upon examination, her extremities were without pain, swelling, or tenderness, and with "grossly normal" motor power. Tr. 354–55. Dr. Verilli's October 13, 2009

report indicates that plaintiff denied joint pain, had a "normal gait," and was "able to stand without difficulty." Tr. 407–08. Furthermore, the record is replete with references to plaintiff's walking, regular completion of household tasks, and pet ownership—all of which directly contradict Dr. Cuevas' opinion that plaintiff could not stand, walk, or lift more than two pounds.

Additionally, Dr. Cuevas' opinion is contravened by the three non-examining physicians who assessed plaintiff's physical RFC. Dr. Merrill determined that plaintiff could occasionally lift up to 20 pounds, frequently lift up to ten pounds, and stand or walk for up to two hours and sit for up to six hours in an eight-hour workday. Tr. 476, 482. He noted plaintiff's "normal gait" and "ability to stand [without] difficulty." Tr. 482. Dr. Berner also indicated that plaintiff was capable of mostly sedentary work; his findings were consistent with Dr. Merrill's report. Tr. 498. He expressly found that Dr. Cuevas' opinion was only partially consistent with the objective findings. Tr. 503. After diagnostic testing was done, Scott Pritchard, M.D., and Sharon B. Eder, M.D., reviewed the results and confirmed the RFC recommended by Drs. Merrill and Berner. Tr. 544.

Further, the record supports the ALJ's determination that Dr. Cuevas' treating relationship with plaintiff was limited. It appears that plaintiff first saw Dr. Cuevas solely to obtain his disability opinion, with no plans to obtain ongoing care. *See* Tr. 389. Although he saw plaintiff several times thereafter, Dr. Cuevas only treated plaintiff for three months, from August 5, 2009 through October 9, 2009. Tr. 369–70.

Moreover, Dr. Cuevas' opinion was generated on check-the-box forms prepared by plaintiff's attorney. An ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions." *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). An ALJ "need not accept the opinion of . . . a treating physician, if that opinion is brief,

conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Dr. Cuevas did not point to any clinical or laboratory diagnostic testing and offered no explanation of his opinion on either form; in fact, because Dr. Cuevas had not provided any treatment to plaintiff at the time of his assessments, no clinical or laboratory diagnostic testing existed. While Dr. Cuevas indicated that x-rays and a pulmonary work-up were needed, he made his opinion without the benefit of such information. When plaintiff eventually underwent testing, after leaving Dr. Cuevas' care, no orthopedic or pulmonary irregularities were detected. Tr. 410–11, 435–39, 452–55. As discussed above, plaintiff's complaints of orthopedic impairment are not medically determinable and/or are completely unsupported by testing, and the medical record overwhelmingly indicates that plaintiff's COPD is stable and managed. Particularly significant is the conclusion of Dr. Verilli, who, after extensive testing, described plaintiff's COPD as "mild." Tr. 455. The ALJ's rejection of Dr. Cuevas' disability opinion should therefore be upheld.

### 2.    Dr. Padilla

Dr. Padilla began treating plaintiff on June 10, 2010. Tr. 530. In anticipation of her hearing, plaintiff's attorney asked Dr. Padilla to provide a "Medical Evaluation" form, which the doctor completed on February 22, 2011. He indicated that plaintiff could stand and walk for up to two hours and sit for up to six hours in an eight-hour workday. Tr. 588. Dr. Padilla also indicated that plaintiff could occasionally—meaning up to one-third of the workday—lift up to 20 pounds. *Id.* Further, Dr. Padilla opined that plaintiff frequently had to lie down or rest for 20 minute to one hour increments during the day and that plaintiff's impairments would require her to be absent from work more than two days a month. Tr. 587.

The ALJ gave "very little weight [to Dr. Padilla's assessment] as it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other

substantial evidence in the case record." Tr. 15. The ALJ is correct that Dr. Padilla's opinion regarding plaintiff's need to rest and to miss work conflicts with the assessments of several other physicians who evaluated plaintiff's ability to perform work-related activities; these doctors opined that plaintiff was capable of working for an eight-hour day with "normal breaks" and, as such, no other physician imposed restrictions similar to those assessed by Dr. Padilla. Tr. 476, 498, 544.

In addition, Dr. Padilla's opinion was generated on a check-the-box form and contained little by way of explanation. *See* Tr. 586–88. As noted above, an ALJ may reject medical reports that contain no explanation of the bases for their conclusions. *Crane*, 76 F.3d at 253; *see also Thomas*, 278 F.3d at 957. Moreover, Dr. Padilla neglected to explain why, despite plaintiff's stable COPD, she was expected to frequently miss work and take breaks to lie down. Dr. Padilla also failed to specify the underlying conditions his opinion was based on.

Finally, it is worth mentioning that the disability opinions of Drs. Padilla and Cuevas, both of whom served as plaintiff's treating physician at some point, are inconsistent with each other. Dr. Cuevas imposed strict ambulatory, postural, and exertional restrictions but said nothing about breaks or missing work, while Dr. Padilla's restrictions conformed to the RFC, but for his opinion that plaintiff needed to frequently miss work and take breaks. These inconsistencies provide additional justification for rejecting both doctors' opinions. *See Morgan*, 169 F.3d at 602 (inconsistency between two physicians' conclusions is justification for rejecting those opinions).

In sum, the ALJ's decision should be upheld because he provided legally sufficient reasons, supported by substantial evidence, for discounting the opinions of Drs. Cuevas and Padilla.

### E.    The ALJ's RFC Assessment

Lastly, plaintiff argues that the ALJ neglected to properly consider the effect of her obesity on her other impairments. *See* Pl's. Opening Br. 16. An ALJ should consider the impact of obesity on a plaintiff's other impairments and RFC. SSR 02–1P, 2000 WL 628049; *Edwards-Alexander v. Astrue*, 336 Fed.Appx. 634, 637 (9th Cir. 2009). In assessing RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe. SSR 96-8p, 1996 WL 374184. However, the ALJ's RFC must only incorporate limitations that are supported by substantial evidence. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001).

Here, contrary to plaintiff's assertion, the ALJ considered her obesity at every step of the analysis. The ALJ listed obesity as severe impairment at step two; the medical evidence indicates that plaintiff's back, hip, and knee discomfort are caused by her obesity, but she neither suffers from a totally disabling orthopedic impairment nor are her osteoarthritic complaints medically-determinable. Tr. 11-12; *see also* Tr. 355, 482, 533–36, 582–83. While obesity is often associated with cardiopulmonary problems, as the ALJ noted, plaintiff "does not have the requisite pulmonary function defects" to qualify her COPD as a listed impairment at step three. Tr. 12; *see also* Tr. 347, 352, 576. Further, when assessing plaintiff's RFC, the ALJ considered plaintiff's obesity-related complaints and properly included functional limitations that were supported by substantial evidence. Tr. 12, 15; *see also Garcia v. Comm'r of Soc. Sec. Admin.*, 498 Fed.Appx. 710, 712 (9th Cir. 2012).

In addition, plaintiff does not identify what further restrictions flow from this impairment; based on her activities of daily living, there is no indication that plaintiff would be unable to perform jobs consistent with her RFC. *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir.

2011) (as amended) ("[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm") (citing *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009)). Therefore, the ALJ properly considered the effect of plaintiff's obesity on her other impairments and overall functioning. Where the ALJ discredited alleged impairments associated with plaintiff's obesity, his findings are supported by substantial evidence. The ALJ's RFC determination should be upheld.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days from service of the Findings and Recommendation. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this _18_ day of October, 2013.

Mark D. Clarke
United States Magistrate Judge

Page 20 – FINDINGS AND RECOMMENDATION